# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DEL ROSARIO GERVACIO DE MARTINEZ, | Case No. 1:19-cv-00528-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ANDREW SAUL, Commissioner of Social Security,[1] | (Doc. 1) |
| Defendant. | |

_____/

## I.   INTRODUCTION

On April 22, 2019, Plaintiff Maria Del Rosario Gervacio De Martinez ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs,

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.     BACKGROUND

Plaintiff was born on October 7, 1963, has a sixth-grade education, can speak some English, and previously worked as a farm laborer. (Administrative Record ("AR") 60, 71, 86, 413, 431, 441, 589, 591, 597, 666, 697.) Plaintiff filed claims for DIB and SSI payments on July 17, 2015, alleging she became disabled on May 21, 2014, due to degenerative disc disease, radiculopathy, chronic neck pain, arm pain and weakness, high blood pressure, cholesterol, asthma, and depression. (AR 403, 416, 573, 574, 590, 597, 634, 646, 666, 674, 678, 683, 690, 697.)

**A.     Relevant Medical Evidence[3]**

**1.     Consultative Examiner Tomas Rios, M.D.**

On October 27, 2015, Plaintiff presented to Dr. Rios for a comprehensive internal medicine evaluation. (AR 807–11.) Plaintiff complained of chronic back problems, asthma, and pain in her right arm. (AR 807.) She reported that her back pain has become more pronounced in the last year and is accompanied by shooting pain to the shoulder joint and both arms. (AR 807.) Plaintiff also describes a history of asthma for several years with chronic cough and episodic wheezing spells, for which she uses an inhaler with good response. (AR 807.) Plaintiff also reported a history of epicondylitis on the right side, which has improved with injection treatment and therapy but still limits repetitive use of her right arm. (AR 807–08.)

Dr. Rios noted that although Plaintiff walked with a walker, its necessity was "doubtful" because her overall motor strength and mobility "did not appear to be significantly compromised" and her equilibrium and balance were normal. (AR 808.) Dr. Rios noted Plaintiff had normal station, and normal heel, toe, and tandem gait. (AR 809.) Her Romberg test was normal. (AR 809.) Plaintiff's straight leg raising test was negative to 80 degrees bilaterally from both seated and supine positions. (AR 810.)

Examination of the neck revealed tenderness along Plaintiff's suboccipital and upper

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 9, 10.)
[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

1 trapezius region.  (AR 810.)  Her Spurlings test was negative.  (AR 810.)  Dr. Rios found Plaintiff's
2 shoulders showed full range of motion without any impingement sign.  (AR 810.)  Her deep tendon
3 reflexes of the biceps and triceps was "2+."  (AR 810.)  Plaintiff's Mills test was negative on the
4 right.  (AR 810.)  Dr. Rios found slight tenderness in Plaintiff's left lateral epicondyle, but no
5 guarding was observed.  (AR 810.)  Plaintiff's grip strength remained normal with preserved fine
6 and gross finger manipulations.  (AR 810.)

7 Dr. Rios noted tenderness of Plaintiff's mid and lower lumbar spine without any spasms of
8 the para lumbar musculature.  (AR 810.)  "Provocative maneuvers" elicited no findings of nerve
9 root compromise.  (AR 810.)  Plaintiff's chest and lungs were observed to be "[s]ymmetric with
10 normal excursions" and "[c]lear to auscultation throughout."  (AR 809.)  Dr. Rios did not observe
11 any "adventitious sounds" or wheezing.  (AR 810.)  Plaintiff had no clubbing of her fingers or
12 cyanosis.  (AR 810.)

13 Plaintiff's motor strength was "5/5" throughout the upper and lower extremities, with
14 normal grip strength.  (AR 810.)  Dr. Rios noted Plaintiff's muscle bulk and tone were normal
15 without any atrophy or spasms.  (AR 810.)  Plaintiff's sensations were grossly intact and her deep
16 tendon reflexes were "2+" in the bilateral upper and lower extremities.  (AR 810.)

17 Dr. Rios diagnosed Plaintiff with degenerative disc disease of the cervical and lumbar spine,
18 lateral epicondylitis on the right resolved, and asthma.  (AR 811.)  He concluded that Plaintiff

19
20
21
> has residual tenderness of the lumbar spine and cervical spine without any evidence of nerve root compromise.  There is slight tenderness along the lateral epicondyle but grip strength is adequate at this point with negative Mills test.  She also has history of asthma but appears to be clinically stable.

22 (AR 811.)  From this, Dr. Rios opined that Plaintiff could stand and walk for up to six hours in an
23 eight-hour period, lift and carry 20 pounds occasionally and 10 pounds frequently, and could
24 perform occasional climbing, balancing, stooping, kneeling, crouching and crawling.  (AR 811.)
25 According to Dr. Rios, Plaintiff should be precluded from working around chemicals, dust, fumes,
26 and gases "on account of her history of asthma."  (AR 811.)  Dr. Rios found Plaintiff had no
27 limitations on sitting and manipulative activities and did not need an assistive device.  (AR 811.)
28 ///

### 2. State Agency Physicians

On November 16, 2015, I. Ocrant, M.D., a Disability Determinations Service medical consultant, assessed Plaintiff's residual functional capacity (RFC)[4] and found that she could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for more than six hours in an eight-hour workday; and perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions. (AR 411, 424.) Dr. Ocrant opined that Plaintiff had no postural, manipulative, visual, or communicative limitations, but that she should avoid concentrated exposure to fumes, odors, gases, and poor ventilation. (AR 411–12, 424–25.) Upon reconsideration on March 25, 2016, another state agency physician, B. Vaghaiwalla, M.D., reviewed the record and affirmed Dr. Ocrant's findings. (AR 439–40, 452–53.)

## B.  Administrative Proceedings

The Commissioner denied Plaintiff's applications for benefits initially on November 20, 2015, and again on reconsideration on April 8, 2016. (AR 459–63, 469–74.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 475–90.) At the hearing on March 8, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 69–85.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a farm laborer, Dictionary of Operational Titles (DOT) code 421.687-010, which was heavy exertional work, unskilled, with a specific vocational preparation (SVP)[5] of 2, performed at the medium level; and as an agricultural produce packer, DOT code 920.667-134, medium, unskilled, and SVP of 2.

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

(AR 86–89.) The ALJ asked the VE to consider a person of Plaintiff's age, education, Spanish-speaking language skills, and with her work background. (AR 89.) The VE was also to assume this person is limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting, standing and/or walking for eight hours in a workday. (AR 89.) The VE testified that such a person could perform Plaintiff's past relevant work as performed. (AR 90.) The ALJ asked a follow up question regarding a second hypothetical worker who was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing and/or walking for eight hours in a workday; and occasional stooping, crouching, crawling, climbing, kneeling, and overhead reaching with right upper extremity. (AR 90.) The VE testified that such a person could not perform Plaintiff's past work, but could perform other light, unskilled positions under the DOT in the national economy, such as hotel maid, 323.687-014, SVP 2; assembler, DOT code 706.684-022, SVP 2; and housekeeper, 323.687-014, SVP 2. (AR 92–94.)

With the third hypothetical, the ALJ asked the VE to consider the limitations set forth in the second hypothetical, with the additional limitation of avoiding concentrated exposure to dusts gases and fumes. (AR 94.) The VE testified that the light unskilled positions he previously identified would be available. (AR 94.) For the fourth hypothetical, the ALJ asked the VE to consider the limitations set forth in the third hypothetical, with the additional limitation that the person would need two to four additional 30-minute breaks per day. (AR 94.) The VE testified there would be no work available in the national economy that such a person could perform. (AR 94.)

Finally, Plaintiff's attorney inquired of the VE whether the maid and housecleaner jobs required exposure of concentrated chemicals, and the VE testified that in his opinion he did not "think they're concentrated at the level that it would be harmful." (AR 95–96.)

**C.   The ALJ's Decision**

In a decision dated April 18, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 49–61.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 51–61.) The ALJ decided that Plaintiff met the insured status requirements of the Act through March 31, 2018, and had not engaged in substantial gainful activity

since May 21, 2014, the alleged onset date (step one). (AR 51–52.) At step two, the ALJ found Plaintiff's impairments of morbid obesity; cervical thoracic and lumbar degenerative disc disease; and right shoulder degenerative joint disease to be severe. (AR 52–54.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 54–55.)

The ALJ then assessed Plaintiff's RFC and applied that assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 C.F.R. [§§] 404.1567(c) and 416.967(c) where [Plaintiff] can lift/carry 50 pounds occasionally and 25 pounds frequently; and sit stand or walk 8 hours in an 8-hour workday.

(AR 55–60.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 56.)

Based on this RFC assessment, the ALJ found that Plaintiff was able to perform her past relevant work of the composite job of farm worker and packer (step four). (AR 60.) The ALJ also made the alternative finding that even if Plaintiff's past relevant work were characterized as a sorter, DOT code 920.667-134, light, SVP of 2, performed at the medium level, Plaintiff retained the RFC to perform that work. (AR 60.) Ultimately, the ALJ concluded that Plaintiff was not disabled at any time through the date of her decision. (AR 61.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 8, 2019. (AR 1–9.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

7

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

///

## IV.  DISCUSSION

Plaintiff contends that the ALJ erred in her treatment of the opinion of consultative examiner Dr. Rios. (*See* Doc. 14 at 5–11.) Defendant counters that that the ALJ properly discounted Dr. Rios's opinion because it was not supported by the medical evidence. (*See* Doc. 15 at 16–20.) The Court agrees with Plaintiff.

### A.  The ALJ Committed Harmful Error in Her Evaluation of Dr. Rios's Opinion

#### 1.  Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of an examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of an examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)); *see also Lester*, 81 F.3d at 830. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, an examining physician's opinion is still owed deference and

will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). The regulations require the ALJ to weigh the contradicted physician opinion, *Edlund*, 253 F.3d at 1157[6], except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of an examining professional. *Lester*, 81 F.3d at 831.

### 2. Analysis

Following an examination on October 27, 2015, consultative orthopedist Dr. Rios opined that Plaintiff was limited to standing and walking for up to six hours in an eight-hour period, lifting and carrying 20 pounds occasionally and 10 pounds frequently, and could perform occasional climbing, balancing, stooping, kneeling, crouching and crawling. (AR 811.) Dr. Rios also opined Plaintiff should be precluded from working around chemicals, dust, fumes, and gases due to her history of asthma. (AR 811.) Although not *specifically* identified by the ALJ as a basis for its rejection, Dr. Rios's opinion is contradicted by the medical opinion evidence of Disability Determinations Service non-examining medical consultants Drs. Ocrant and Vaghaiwall. Drs. Ocrant and Vaghaiwall opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for more than six hours in an eight-hour workday; and perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions. (AR 411–12, 424–25, 439–40, 452–53.) Thus, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Rios's opinion.

In reviewing the medical evidence and giving "little weight" to the opinion, the ALJ stated that Dr. Rios "was only able to evaluate [Plaintiff] once, was not able to review the medical evidence available at the hearing level, and appears to have relied heavily on [Plaintiff's] reported

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. §§ 404.1527, 416.927.

symptoms." (AR 59.) This explanation cannot withstand scrutiny.

First, the ALJ's rejection of Dr. Rios's opinion because it was based on a one-time examination of Plaintiff is improper. If a limited treating relationship constituted a legitimate reason for rejecting an opinion from an examining source, such opinion would *always* be rejected, because the relationship between a claimant and an examining physician is generally limited to a single examination, rendering that opinion worthless. *See Grayson v. Astrue*, No. 2:11–cv–1656–EFB, 2012 WL 4468406, at *5 (E.D. Cal. Sept. 25, 2012) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (holding that while a limited treating relationship may be a valid reason for not according a treating physician's "findings the conclusive weight of a treating medical-source opinion, . . . it is not by itself a basis for rejecting them—otherwise the opinions of consultative examiners would essentially be worthless . . . .")).

The criticism that Dr. Rios "was not able to review the medical evidence at the hearing level" is equally unjustified. While it is correct that Dr. Rios's examination and opinion were rendered two years prior to the March 2018 hearing, without the benefit of the evidence available at that time (*see* AR 69), the same is true for the opinions of non-examining physicians Drs. Ocrant and Vaghaiwall. (*See* AR 404–407, 411–12, 417–420, 424–25, 432–36, 439–40, 445–49, 452–53.) Yet, the ALJ accorded "great weight" to those opinions, and, instead of being critical that their review was limited to the medical record available at the time of their opinions, the ALJ *touted* that fact. (*See* AR 58.) This disparate treatment of the examining physicians over that of the non-examining physicians, without any further explanation, suggests an attempt by the ALJ to justify a conclusion of non-disability by ignoring competent evidence in the record that supports an opposition result. Such approach is contrary to Ninth Circuit precedent. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Finally, the ALJ's finding that Dr. Rios "appears to have relied heavily on [Plaintiff's] reported symptoms" is not supported by substantial evidence. (AR 59.) The only example cited by the ALJ is that Dr. Rios "provided limitations on pulmonary irritants and noted [Plaintiff's] history of asthma but also noted her asthma appeared clinically stable." (*Id*.) There is nothing in Dr. Rios's report, however, indicating or suggesting he relied on Plaintiff's reported history of

11

asthma for this limitation. Support for such a limitation is also found in the medical records considered by Dr. Rios, which were provided to him by the Disability Determinations Service.[7] (*See* AR 807.) Other than this lone example, which is of dubious merit, the ALJ does not point to anything else in Dr. Rios's report to suggest or indicate he relied on anything for his opined limitations other than his own examination and observation of Plaintiff, along with the medical records he reviewed. *See, e.g., Maldonado v. Colvin,* No. 2:13-CV-385-EFB, 2014 WL 4925188, at *4 (E.D. Cal. Sept. 30, 2014) ("[T]he ALJ provides no explanation for this conclusion and does not cite to any evidence in the record showing that Dr. Tily's opinion relied heavily on plaintiff's subjective complaints without objective support."); *Wright v. Astrue*, No. ED CV 12-726 MRW, 2013 WL 440593, at *3 (C.D. Cal. Feb. 4, 2013) (finding ALJ erred by not addressing medical records that underlaid treating physician's opinion and instead "incorrectly impl[ying] that the [opinion] was based on Plaintiff's subjective pain complaints.").

The Commissioner's opposition brief presents a discussion of how Dr. Rios's opinion was not consistent with his clinical examination; it identifies some of Plaintiff's purportedly normal physical findings and alleged management of her symptoms, and from this it concludes that Dr. Rios's opinion is unsupported. (Doc. 15 at 14–19.). Yet, the frequency and severity of Plaintiff's symptoms, her improvement with treatment and the inconsistency of the opinion with the medical evidence were not articulated in the ALJ's decision as reasons to discount Dr. Rios's opinion. While the Court can draw reasonable inferences from the ALJ's decision, *Magallanes*, 881 F.2d at 755, the Court cannot consider the Commissioner's post hoc rationalizations. The Ninth Circuit has repeatedly emphasized that the "bedrock principle of administrative law" is that a "reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991); *see also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been

---

[7] Incidentally, it is these same records on which the non-examining physician based his opinion, like that of Dr. Rios, that Plaintiff should avoid concentrated exposure to fumes, odors, gases, and poor ventilation. (AR 404–407, 411–12, 417–420, 424–25.) The ALJ nevertheless concluded that such limitation was "not necessary." (AR 59.)

thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained to review the reasons the ALJ asserts."). An agency's decision cannot be affirmed on the ground that the agency did not invoke in making its decision. *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001).

In sum, the Court finds that the ALJ did not offer specific and legitimate reasons, supported by substantial evidence, for discrediting Dr. Rios's opinion. Moreover, the Court cannot conclude that the error below was harmless. *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054). If the ALJ were to have accepted Dr. Rios's analysis, the ALJ likely would have reached an RFC determination with the greater limitations that Dr. Rios recommended. As Plaintiff points out, that, together with a finding that Plaintiff is illiterate or unable to communicate in English, would have warranted a finding of disability under the Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2 § 202.09 ("Grid Rule 202.09"). Thus, Plaintiff may well have been prejudiced by the improper rejection of Dr. Rios's opinion.

**B.     The ALJ's Error Warrants Remand for Further Proceedings**

In her briefing, Plaintiff argues that the Court should credit the opinion of Dr. Rios as true and order the payment of benefits under Grid Rule 202.09, or alternatively remand the matter for further administrative proceedings. (*See* Doc. 14 at 11.) The Court finds that an order for payment of benefits is not warranted in this case, and instead that remand for further proceedings is appropriate.

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be

13

useful." *Id.* at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Having found that the ALJ failed to articulate specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Plaintiff's examining physician, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings will be useful.  In particular, the ALJ's RFC determination conflicted with the opinion evidence of Dr. Rios—as well as other evidence in the record.  This error can be remedied with further proceedings to accord an opportunity to the ALJ to resolve this conflict.[8]  *Cf. Dominguez v. Colvin,* 808 F.3d 403, 408–09 (9th Cir. 2016); *Lule v. Berryhill*, Case No.: 1:15-cv-01631-JLT, 2017 WL 541096, at *6 (E.D. Cal. Feb. 10, 2017) ("When there is conflicting medical evidence, 'it is the ALJ's role to determine credibility and to resolve the conflict.'") (quoting *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  On remand, the ALJ should address the error by properly considering the medical opinion evidence, including Dr. Rios's opinion, and then either provide specific and legitimate reasons to reject the opinion or incorporate its limitations into the RFC determination.

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Maria Del Rosario Gervacio De Martinez and against Defendant Andrew Saul, Commissioner of Social Security.

---

[8] Moreover, even if Dr. Rios's opinion were credited, a finding of disability would not necessarily be dictated under Grid Rule 202.09, as it is not clear on this record that the Commissioner could not meet its burden of establishing that Plaintiff is is literate or able to communicate in English.  *See, e.g, Jeffrey v. Berryhill*, Case No. 17-cv-01444-WQH (RBB), 2018 WL 3656154, at *4 (S.D. Cal. Aug. 2, 2018).

IT IS SO ORDERED.

Dated:     **September 14, 2020**                              /s/ *Sheila K. Oberto*                    .
UNITED STATES MAGISTRATE JUDGE